UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SARAH ELSAYED, on behalf of herself and
all others similarly situated,

Plaintiff,

-against-

COLUMBUS TRADING PARTNERS USA
INC.,

Defendant.

**MEMORANDUM AND ORDER**
Case No. 25-cv-01347 (FB) (TAM)

*Appearances:*

*For the Plaintiff:*
JAMES R. DENLEA
JEFFREY I. CARTON
CATHERINE HARRIES FRIESEN
Denlea & Carton LLP
2 Westchester Park Drive
Suite 410
White Plains, NY 10604

*For the Defendant*
MICHAEL HAYDEN REED
RUSSELL M. YANKWITT
Yankwitt LLP
140 Grand Street
White Plains, NY 10601

BENJAMIN W. JEFFERS
BENJAMIN ISAAC SHIPPER
Hickey Hauck Bishoff Jeffers & Seabolt,
PLLC
706 S. Main Street
Plymouth, MI 48170

**BLOCK, Senior District Judge:**

In this putative class action, Sarah ElSayed claims that she and thousands of others

purchased infant car seats, also known as child restraint systems ("CRS"), from Columbus

Trading-Partners USA Inc. ("CTP"), which proved to be faulty and dangerous. ElSayed seeks

compensation for herself and similarly situated consumers for CTP's alleged violations of New

York General Business Law ("GBL") §§ 349 and 350, as well as for breach of an express

warranty. Defendant first claims, pursuant to Rule 12(b)(1), that the Court does not have standing to adjudicate these claims because Plaintiff has not alleged a cognizable injury. Alternatively, Defendant moves, pursuant to Rule 12(b)(6), to dismiss the complaint for failure to state a claim. For the following reasons, the motion is GRANTED.

I.

The following facts are taken from the Complaint and are presumed to be true at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). ElSayed is a citizen of New York state. Class Action Complaint ("CAC") at ¶ 21, ECF No. 1. CTP is a Delaware corporation with its principal place of business in Massachusetts. *Id.* at ¶ 24. Accordingly, the Court has jurisdiction over this matter under diversity jurisdiction. 28 U.S.C. § 1332.

CTP markets, sells, and distributes Cybex juvenile products, including CRS seats, in New York State through mass retailers.[1] *Id.* at ¶ 25. One of these products is the Cybex Aton G infant seat ("Aton G"). *Id.* at ¶ 2. Recognizing the interest parents have in protecting their children, CTP prioritized safety in advertising for the Aton G, writing on its website that the seat conforms to a "higher standard of safety" because it was "engineered in Germany- where safety standards are among the highest in the world," among other claims. *Id.* at ¶ 34. ElSayed claims that she purchased an Aton G for her infant child because of such claims, and that she paid a premium over similar CRS seats because she understood the Aton G to be safer than its competitors. *Id.* at ¶¶ 16, 18.

---

[1] Cybex is CTP's German parent company. CAC at ¶ 26. They were named in the original complaint, but Plaintiff has since voluntarily dismissed all claims against Cybex. ECF No. 12.

Unfortunately, CTP discovered issues with the seat, and on February 14, 2025, initiated a voluntary recall of Aton G infant seats manufactured between February 20, 2023 and May 10, 2024. *Id.* at ¶ 41. All CRS seats use a five-point harness system to ensure that the seat stays in place when used in a vehicle. *Id.* at ¶ 1. CTP initiated the recall because one of the Aton G's harness system anchor pins tended to break. Specifically, the Recall notice recognized "that certain actions can allow the harness anchor pin to dislodge . . . when the seat is not in use. If the seat is slid or scraped over a sharp edge . . . the harness anchorage hooks can bend. This bending can cause the harness anchor pin to dislodge[.]" *Id.* at ¶ 42 (*quoting* Recall Notice, CAC Ex A. ECF No. 1-1). The Recall notice advised Aton G users that, prior to any use, they should "check the harness anchor retention hooks for any damage. If any hooks are bent away from the harness anchor pin, do not use the seat and contact Cybex immediately for assistance." *Id.* at ¶ 43. CTP remedied the error with a design change for Aton G seats manufactured after May 10, 2024. *Id.* at ¶ 46.

Rather than offer refunds or replacements, CTP opted to offer Aton G purchasers "free remedy kit[s]," which would include "a device that locks the harness and harness anchor pin in place" and which could be installed by the consumers themselves. *Id*. at ¶ 47. At the time the Complaint was filed the remedy kits were not yet available. *Id*. at ¶ 49. CTP advised consumers that they should check the anchor pins for damage before every use until the remedy kits became available. *Id.*

II.

3

"To satisfy the irreducible constitutional minimum of standing, a plaintiff must demonstrate (1) a personal injury in fact, (2) that the challenged conduct of the defendant caused, and (3) which a favorable decision will likely redress." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012).[2]

Defendant contends that ElSayed has not established an injury in fact, but that argument is without merit. Payment of a price premium is a constitutionally cognizable injury. *See Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 703-04 (2d Cir. 2020) ("[Plaintiff] suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained financial injury — paying a premium — as a result."); *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92 (2d Cir. 2018) (finding standing where plaintiff alleged she paid more for product based on purported misrepresentation).The complaint alleges that ElSayed paid more for the CRS seat than she would have otherwise (injury) because of CTP's misrepresentations (causation) and that she wants to be made whole with a refund (redress). Thus, ElSayed has standing to bring her claims and the Court has subject-matter jurisdiction over the case. CTP's 12(b)(1) motion is denied.

### III.

Before analyzing whether ElSayed's claims survive the 12(b)(6) motion, the Court must address a threshold issue. CTP argues that all of Plaintiff's claims should be dismissed because she has not suffered any manifestation of the alleged defect, and "New York law requires a

---

[2] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

4

manifested defect for a plaintiff to recover on any claim." *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 429 (S.D.N.Y. 2017), *modified on reconsideration*, 2017 U.S. Dist. LEXIS 126700 (S.D.N.Y. Aug. 9, 2017). CTP cites several other cases in support of this proposition. *See e.g. Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 57 (S.D.N.Y. 2019) ("New York courts routinely reject the argument that a common defect which never manifests itself ipso facto cause[s] economic loss, and therefore satisfies the actual injury element under § 349."); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982) (no cause of action where alleged defect in tires never manifested itself).

The crux of these cases is that a plaintiff may not recover for an alleged common defect that never materializes and thus never actually detracts from the plaintiff's enjoyment of the product. *See, e.g.*, *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997) ("Where, as here, a product performs satisfactorily and never exhibits the alleged defect, no cause of action lies."); *Hubbard v. GMC*, 95 Civ. 4362, 1996 U.S. Dist. LEXIS 6974 at *10 (S.D.N.Y. 1996), 1996 U.S. Dist. LEXIS 6974, at *10 ("[A] Suburban that performs satisfactorily and never exhibits the alleged braking system defect is fit for the purposes intended and does not give rise to a breach of warranty claim or any other"). In short: where a product performs satisfactorily, there can be no recovery.

However, unlike the products described in CTP's cited cases, Plaintiff's Aton G *did not* perform satisfactorily. The recall explicitly instructs caregivers to check the Aton G's harness pins *before every use*, because they were prone to bend or break. CAC at ¶ 49. This is not a situation of theoretical harm caused by a potential defect; at issue here is an actual defect manifested in every Aton G subject to the recall. Accordingly, Plaintiff did not get the benefit of

5

her bargain, instead finding herself saddled with a faulty and dangerous CRS which she could not use as expected and which she had to manually examine before every use. This is not how a car seat is supposed to be used, and it is therefore defective by definition. Plaintiff has therefore pled sufficient "defect manifestation" to state her claims under New York law.[3]

IV.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The pleading must offer more than "bare assertions," "conclusory" allegations, and a "formulaic recitation of the elements of a cause of action." *Id.* In reviewing a motion to dismiss, the court accepts as true all well-pled factual allegations and draws all reasonable inferences in the nonmoving party's favor. *Id.*

### A. GBL §§ 349 and 350

CTP argues that Plaintiff's claims under New York's GBL should be dismissed because the CAC does not allege any fraudulent statements or misrepresentations of fact. "Section 349 of the New York General Business Law declares unlawful '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.'" *Colpitts v. Blue*

---

[3] There is some uncertainty as to whether this is truly a requirement to state a claim in new York, as numerous federal courts have maintained actions where no such manifestation was present. *See e.g. Lee v. Mikimoto (Am.) Co.*, No. 22-cv-01923-PAC, 2023 U.S. Dist. LEXIS 55637, at *9 (S.D.N.Y. Mar. 30, 2023) ("a plaintiff can show injury by alleging an overpayment, whereby the plaintiff paid more than he would have but for the deceptive practice"); *In Re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs., & Products*, 1:19-md-2903, 2023 U.S. Dist. LEXIS 21312, at *16 (W.D.N.Y. Feb. 8, 2023). Nonetheless, the Court concludes that ElSayed plausibly pleads that the defect was manifest in all Aton G's subject to the recall, and therefore need not address this ambiguity in state law.

6

*Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021) (quoting N.Y. G.B.L. § 349(a)).

"Section 350 prohibits '[f]alse advertising in the conduct of any business, trade, or commerce or in the furnishing of any service.'" *Id.* (quoting N.Y. Gen. Bus. L. § 350). "To state a claim under either Section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Id.* CTP engages in consumer-oriented conduct, and the Complaint adequately pleads an injury, so the only matter still in dispute is whether CTP's claims about Aton G's safety amount to material misrepresentations or mere puffery, which is not actionable. *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) ("Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language.").

The specific claims identified in the Complaint as materially misleading are that the Aton G conforms to a "higher standard of safety" because it was "engineered in Germany- where safety standards are among the highest in the world;" has "advanced safety features;" "combines advanced technologies with luxurious details to deliver an exceptional first car seat for your child"; "marries the highest standard of safety with a focus on child comfort"; and "[o]ffer[s] maximum convenience and safety without comprising on design." CAC at ¶¶ 34–37. Plaintiff contends that these claims are measurable and objective, and as such, actionable instances of misrepresentation.

However, general statements about a product's safety "do not create an enforceable promise" on which a consumer can base a misrepresentation claim. *See In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 U.S. Dist. LEXIS 92499, at *10 (S.D.N.Y. July 15, 2016). This is

7

because such statements are "too vague or lacking in factual content to be actionable." *Id.* In contrast to this general proposition, specific, measurable, and superlative claims about safety *can* rise to the level of objective and misrepresentative statements if they would mislead a reasonable consumer.

A series of recent cases revolving around Uber's safety claims illustrate how difficult it is to identify the difference. On the one hand, various courts have ruled that Uber's claims that it will "set[] the strictest safety standards possible," that it offered "the safest rides on the road" and that "every ride on the Uber is safer than a taxi" were actionable misrepresentations and not puffery. *See Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 368–369 (S.D.N.Y. 2021); *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 861 (N.D. Cal. 2015); *Delux Cab, LLC v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 57494, at *5 (S.D. Cal. Apr. 13, 2017). These statements were potentially provably false because of the superlative language; in the courts' reasoning, only one product can be the "safest" and therefore such a claim could be materially misrepresentative.

On the other hand, other courts have found these very same comments too boastful, self-congratulatory, aspirational, or vague to amount to misrepresentation. *See e.g., XYZ Two Way Radio Serv. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016) ("[T]he challenged statements cannot reasonably be understood as specific representations of objective facts."); *DeSoto Cab Co. v. Uber Techs., Inc.*, No. 16-cv-06385-JSW, 2018 U.S. Dist. LEXIS 226261, at *32 (N.D. Cal. Sep. 24, 2018) ("[W]hat constitutes a 'gold standard' and/or 'the safest ride on the road' is in the eye of the beholder.").

8

Wading into this vague and inexact area of law, the Court concludes that Plaintiff has failed to state a claim under either GBL § 349 or § 350. "Whether a representation is mere puffery depends, in part, on the context in which it is made." *Doe,* 551 F. Supp. 3d at 368. Here, CTP's superlative statements were not made in a context that would mislead a reasonable consumer. CTP's statements contain two superlative claims, that they "marr[y] the highest standards of safety with a focus on child comfort," and that Germany has safety standards "among the highest in the world." The latter of these claims is true and undisputed. The former statement, without more evidence of misrepresentation, is mere puffery. CTP's language is similar to some of the claims found in the Uber cases, but Uber published repeated, superlative statement that appear more objectively measurable, including that they "set[] the strictest safety standards possible," that they offer "the safest rides on the road," and that "every ride on the Uber is safer than a taxi." It was in this context that courts found Uber's claims actionable. Here, CTP's "highest standards of safety" claim was not paired with any similar superlative statements and cannot be interpreted as materially misleading in the context of its other general and vague statements about product safety (e.g. its "higher standard of safety" and its offering of "advanced safety features").

Lastly, there is a meaningful difference between a company claiming that they offer the safest product and claiming that they set the highest safety standards. Standards in the abstract are necessarily aspirational, as they describe a policy or plan and not the actual outcome or product. *See e.g. Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676(ADS)(WDW), 2012 U.S. Dist. LEXIS 30608, at *60-61 (E.D.N.Y. Mar. 5, 2012) (statement that company is "dedicated to the highest standards of manufacturing" is "too vague" and "aspirational" for consumer reliance).

9

Absent a claim that the Aton G is the "safest" car seat, the claim that CTP sets "the highest standards of safety" would be interpreted by a reasonable consumer to mean that they set high expectations for their employees in designing and manufacturing their products. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."). This single superlative safety claim is insufficient to maintain a cause of action under GBL §§ 349 or 350. Defendant's motion to dismiss Counts I and II is therefore granted.

### B. Breach of Express Warranty

CTP finally argues that Plaintiff's Breach of Express Warranty claim (Count III) should be dismissed because the warranty does not cover design defects. As the Court agrees, Count III is dismissed as well.

Under New York law, manufacturing defects are distinct from design defects. "[A] warranty that protects against defects in materials or workmanship covers manufacturing defects, but not design defects." *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016). To assert a manufacturing defect, "the plaintiff must show that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001). "Because a manufacturing defect exists when the unit in question deviates in quality and other performance standards from all of the other identical units, a claim devoid of allegations that a particular unit differed when compared to others in the same product line will be dismissed." *Guariglia v. Procter & Gamble Co.*, No. 15-CV-4307, 2018 U.S. Dist. LEXIS 42861, at *5 (E.D.N.Y. Mar. 14, 2018).

10

The Aton G's Warranty stated that the product would "be free from defects in material and workmanship for two (2) years from the date of original purchase." Aton G User Manual, 74, ECF No. 28-1. CTP contends that the complaint only states a claim for Breach of Warranty for a design defect, and as such that the "material and workmanship" warranty does not cover the alleged defects. *See e.g., Orange Transp. Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311, 318 (W.D.N.Y. 2020) (interpreting similar language to warrant only against manufacturing defects). The Court agrees that the Aton G was only warranted for material and workmanship defects.

The Complaint describes the defect as such: "the hip anchor retention hooks under the seat are *designed* in a way that the anchor pins can become deformed when the seat slides or scrapes across a sharp edge." CAC ¶ 5 (emphasis added). Subsequently the Complaint acknowledges that "Defendants claim to have corrected the Defect with a design change for Aton G infant seats manufactured after May 10, 2024, that removed the anchor hooks and replaced them with a single stronger retention bar which is rounded." *Id.* at ¶ 46 (*citing* CTP Feb. 14, 2025 Recall Report, https://perma.cc/8FSK-VW26).[4] Despite this unambiguous language, Plaintiff contends that the "allegations taken as a whole encompass a defect in materials and workmanship." Pl's Mem., 20, ECF No. 29. The Court does not agree.

Even reading the Complaint in the light most favorable to Plaintiff, the Court does not see any suggestion that the complained-of defect was caused by a manufacturing error. The

---

[4] CTP's Feb. 14, 2025 Recall Report is hyperlinked in a footnote in the Complaint and described in Paragraph 46. The Court therefore deems it incorporated by reference. *See McLennon v. City of N.Y.*, 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016) ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents.").

11

Complaint repeatedly refers to design defects, and contains no mention of materials or manufacturing issues. The Feb. 14 Recall Report describes a clear design difference between the chairs that were recalled and those that were not. In CTP's own words: "The recall condition was corrected in production through an engineering change which removed the two retention hooks and replaced them with a single retention bar which is rounded and below the edges of the shell of the CRS." CTP Feb. 14, 2025 Recall Report, 1. In other words, they were designed differently.

Because plaintiff does not suggest that "the unit in question deviates in quality and other performance standards from all of the other identical units," *Guariglia,* 2018 U.S. Dist. LEXIS 42861 at *5, and the Recall Report indicates that the defect in the Aton G was caused by a design error, the Court must conclude that the problem was one of design. As the Aton G's express warranty only covers manufacturing and workmanship defects, the warranty does not cover this defect. Therefore, ElSayed has failed to state a claim for breach of express warranty and Count III is dismissed as well.

Conclusion

For the foregoing reasons, CTP's motion to dismiss is GRANTED in its entirety. Accordingly, the case is dismissed.

**SO ORDERED**.

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 17, 2026